```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         NORTHERN DIVISION
```

ELIZABETH J. BROWNING,            )
                                  )
        Plaintiff,                )
                                  )
    v.                            )      No. 2:12 CV 42 DDN
                                  )
CAROLYN W. COLVIN,[1]             )
Acting Commissioner of Social     )
Security,                         )
                                  )
        Defendant.                )

## MEMORANDUM

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the applications of plaintiff Elizabeth J. Browning for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income (SSI) under Title XVI of that Act, 42 U.S.C. § 1382. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

## I. BACKGROUND

Plaintiff filed her applications for DIB and SSI on November 16 and 24, 2009, respectively. (Tr. 120-22, 123-30.) She was born in 1958 and alleged an October 7, 2009 onset date. (Tr. 120.) She alleged disability due to depression, anxiety, and swelling in her legs. (Tr. 148.) On February 8, 2011, the ALJ issued a decision concluding that plaintiff was not disabled. (Tr. 14-25.) On April 17, 2012, the Appeals Council denied her request for review. (Tr. 1-5.) Thus, the ALJ's decision stands as the final decision of the Commissioner.

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. The court hereby substitutes Carolyn W. Colvin as defendant in her official capacity. F.R.Civ.P. 25(d).

## II. MEDICAL AND OTHER HISTORY

On February 26, 2009, plaintiff was admitted to the emergency room (ER) at Audrain Medical Center for sharp pain in her left leg while at work at Wal-Mart. An MRI showed soft tissue swelling and no bony abnormality. A venous examination of her left leg was normal. She was a smoker and was not taking any medication at the time. X-rays revealed no fracture, and she was diagnosed with a muscle strain. (Tr. 204-19.)

On March 2, 2009, she was seen for follow-up. Her left lower leg pain had been resolved and she was "doing fine." She could move her lower extremities and her gait was normal. She had bilateral low extremity swelling. Her injury had probably been a muscle spasm or mild strain but she was doing fine. She was given permission to return to work and instructed to watch her salt intake. (Tr. 236.)

On October 20, 2009, plaintiff was seen at the Arthur Center for depression and difficulty holding down a job. She was diagnosed with recurrent, moderate, major depressive disorder. She had a global assessment of functioning (GAF) score of 50, indicating "serious" symptoms, and was prescribed Cymbalta, an anti-depressant. (Tr. 55, 224-29.)

Plaintiff was seen on December 1, 2009 with complaints of pain in her right breast for the past two months. She did not appear in any distress. Notes state "she seems to have a lot of somewhat strange complaints of her chronic pains and feet heaviness at this time. Unsure whether breast pain is related to overall pains, whether it is psychiatric, or whether something more is going on." (Tr. 233.) The exam was "pretty much unremarkable." (233-34.)

In a Function Report dated December 12, 2009, plaintiff reported, among other things, that she cooks, cleans around the house, shops, drives an automobile, and cares for her young daughter. She attends church every Sunday, performs small household repairs, does some mowing, crochets, and swims during the summer. She shops and visits with her children in person and on the phone. She watches television, does some sewing, and is able to handle her finances. (Tr. 169-75.)

Plaintiff saw her primary care physician (PCP) Justin Jones, M.D., in December 2009 and January 2010. Examination showed no cyanosis (bluish

coloring to the skin due to tissues being low in oxygen), clubbing (proliferation of soft tissue around the ends of fingers or toes), or edema (swelling). Dr. Jones suggested a follow-up appointment for her leg pain, but she declined. (Tr. 231-33.)

On February 1, 2010, plaintiff saw Denise M. Barba, M.D., for swelling in her ankles and feeling in her legs and to establish care with a new PCP. Plaintiff reported that she had quit her prior PCP, Dr. Jones, because he told her that all of her symptoms were in her head. Plaintiff reported that her depression was stable while taking Cymbalta. Her mood and affect were normal. There was trace edema or swelling around her ankles but her pedal pulses were good. She was 5 feet, 5 inches tall, and weighed 254 pounds. She was diagnosed with leg and foot pain with swelling, likely caused by arthritis; gastroesophageal reflux disease (GERD); migraines; and depression that was stable with medication. She was instructed to wear support stockings, elevate her legs, and rest as needed. (Tr. 292-93.)

A February 3, 2010 consultative disability examination by Todd Riggs, D.O., showed plaintiff was able to able to walk 50 yards from the waiting room to exam room, remove her shoes, get up and onto the scale and examination table, and bend over and pick up her shoes, all without difficulty. She showed no gait, neurologic, sensory, motor, or reflex abnormalities, and no muscle atrophy, muscle spasm, or tenderness was noted. Range of Motion (ROM) testing was essentially normal. Plaintiff told Dr. Riggs that she could sit for about an hour at a time, stand for about an hour at a time, walk two to three blocks, and lift about 20 pounds. She had no difficulty handling objects and no difficulty traveling. Dr. Riggs noted, "[r]egarding the problem with her legs, it may be problematic to her, but I could find no definite findings to limit her activities of daily living or interfere with working." (Tr. 242, 247-48.)

A March 8, 2010 Mental Residual Functional Capacity (RFC) Assessment performed by Michael Stacy, PhD., showed that plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a

consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. In all other categories, plaintiff was not significantly limited. (Tr. 264-66.)

A Physical RFC completed the same day showed the following limitations: plaintiff could occasionally lift 50 pounds; frequently lift and carry 25 pounds; stand and/or walk for 6 hours in an 8-hour workday; and perform unlimited pushing and pulling. She had no other limitations. (Tr. 267-73.)

Plaintiff saw Dr. Barba on March 22 and May 10, 2010 for dizziness and pain in her legs and shoulder blades. She had good pedal pulses. Her chest was clear, there were no cardiovascular abnormalities, her abdomen was obese but soft and nontender, and her calves were nontender to palpation. She was not in any acute distress. She had 1-2+ pitting edema[2] in her feet, ankles, and lower legs and Dr. Barba prescribed a diuretic. Her gait was normal but she was obese and had difficulty moving. Dr. Barba ordered chest x rays and blood work. Dr. Barba diagnosed edema and dyspnea or shortness of breath, and wanted to rule out a cardiac pathology. She suspected that most of plaintiff's depression symptoms were related to her physical symptoms. (Tr. 289-92.)

Plaintiff was seen by Kenneth Lawlor, M.D., and Gregory Wilson, D.O., at the Rheumatology Clinic from April 15 to August 17, 2010. She had some pain to palpation of her upper back muscles, and multiple tender points, but no joint pain or swelling. An August 17, 2010 examination

---

[2]Pitting edema is a physical examination finding that occurs when pressing on a patient's skin, usually the shins, ankles, or feet, and a "pit" forms at the site of pressure. Pitting edema is graded on a scale from 1 to 4, which is based on both the depth the "pit" leaves and how long the pit remains. A patient with a score of 1 has edema that is slight (roughly 2mm in depth) and disappears rapidly. A score of 2 is deeper (4mm) and disappears within 15 seconds. A score of 3 is deeper yet (6mm), and can last longer than a minute; in stage 3 pitting edema the extremity also looks grossly swollen. Finally, stage 4 is the most severe with deep pitting (8mm or greater in depth) that may last more than 2 minutes. http://www.virtualmedstudent.com/links/physical_examination/pitting_edema.html (last visited April 17, 2013).

revealed no clubbing, cyanosis, or edema.  Recent knee x-rays showed only minimal degenerative changes.  Her neurologic examination and muscle strength were normal, and she was encouraged to exercise regularly.  (Tr. 307-16.)

Subsequent examinations showed plaintiff had no edema, with the exception of an October 8, 2010 visit to Dr. Barba when she had edema on her shin.  She had some diffuse wheezing and poor air entry, however, after a breathing treatment, she had good air entry and only occasional wheezing.  (Tr. 276, 308, 311, 315.)  Plaintiff consistently had no clubbing or cyanosis in the legs.  (Tr. 231, 233, 332.)  She had good pulses in her feet and a normal gait.  (Tr. 291-92.)  X-rays of her knees showed minimal degenerative changes.  (Tr. 296.)  Plaintiff saw Dr. Barba on subsequent occasions in 2010 for complaints of cough, cold type symptoms, and fatigue.  (Tr. 277-90.)

In a November 5, 2010 assessment Dr. Barba opined that plaintiff could sit for one hour in an eight-hour workday and stand for less than one hour in an eight-hour workday.  She could use both hands for repetitive actions.  She could not use either foot for repetitive movements as in operating foot controls.  She could frequently lift/carry 0-9 pounds; occasionally lift and carry 10-19 pounds, and never carry 20-100 pounds. She could never perform postural maneuvers such as bending, squatting, crawling, or climbing.  She should never be exposed to unprotected heights; moving machinery; marked changes in temperature and humidity; and dust, fumes, and gases.  She could drive but would need frequent breaks and could not reach above her right shoulder.  Dr. Barba believed that plaintiff would require four to six 15-30 minute unscheduled breaks during an eight-hour workday and that she would be absent from work approximately two days per month.  (Tr. 274-75.)

**Testimony at the Hearing**

On January 19, 2011, Browning appeared and testified to the following at a hearing before an ALJ.  (Tr. 30-63.)  She has a tenth grade education and no GED.  She attended special education classes while in school.  She can write fairly well but has difficulty reading.  She would not be able to work a forty hour work week due to her physical condition

and depression. (Tr. 53-54.)  She is divorced and has one minor child living with her, age 10.  She has a driver's license but is not able to drive much because she cannot use her legs for any length of time.  On October 7, 2009 she stopped working at Walmart due to medical problems. (Tr. 30-37.)

She weighs 276 pounds.  Her legs swell from the knees down and she loses some circulation in her legs when she is on her feet for any length of time, making it very difficult to walk.  She takes medicine for her arthritis.  She takes a diuretic, elevates her legs, and wears support hose to reduce the swelling.  She elevates her feet for 30-45 minutes on and off throughout her day, for a total of five hours per day.  She had great difficulty helping her daughter with her job delivering newspapers. (Tr. 39-45.)

She was hospitalized for depression in 2005.  She has always suffered from depression and copes with it on a regular basis.  She began to have panic attacks, possibly a symptom of menopause, when she was working.  Medication helps alleviate the panic attacks, and they are not as frequent as they used to be.  She is very self conscious about her weight, contributing to her depression.  Her memory has also recently diminished.  She does not attend PTA meetings or other school functions due to her depression and self consciousness.  (Tr. 45-51.)

She used to ride bikes, walk, visit parks, and play with her grandson, but no longer does so because it is difficult to walk.  She can walk for about an hour before needing to rest.  She gets out of breath easily.  She cannot sit for more than an hour before her legs start to cramp.  She can lift and carry about ten pounds.  Her mother and daughter do the laundry for her.  She and her daughter cook simple meals. (Tr. 49-53.)

Non-examining Medical Expert (ME) Ashok I. Khushalani, a psychiatrist, also appeared and testified to the following.  While he had not personally examined plaintiff, Dr. Khushalani had read the medical record regarding plaintiff.  Plaintiff has a long standing history of moderate recurrent depression.  She is currently on Cymbalta, and it is effective in controlling her depression.  She has never had any formal

psychiatric treatment. She has not been hospitalized for any condition since 2009. (Tr. 11, 54-55.)

Dr. Khushalani opined that plaintiff had mild restrictions of activities in daily living (ADL), in her social interaction, and in difficulties maintaining concentration, persistence and pace. He opined that plaintiff's depression did not meet the severity of a listing. He opined that plaintiff would have no limitation in remembering and understanding simple instructions and in making judgments on simple work-related decisions. He believed that she had marked limitation in understanding and remembering complex instructions; mild limitation in her ability to interact appropriately and respond to changes in the work setting and with the public; no limitation in her ability to interact with supervisors; and mild limitation in her ability to interact with coworkers and to respond appropriately to work situations and to changes in a routine work setting. (Tr. 55-57.)

Vocational Expert (VE) John McCowen also appeared and testified to the following at the hearing. The ALJ asked the VE to assume a hypothetical individual of plaintiff's age, education and past work experience who would need to alternate between sitting and standing at will; could lift up to 20 pounds at a time, and carry up to 10 pounds. She would be prohibited from working at heights or climbing, moving dangerous equipment, and repetitive overhead reaching. The VE testified that plaintiff would be prohibited from her past relevant work due to her limitations in sitting and standing under that hypothetical. The ALJ next asked about hypothetical individuals who would need to lay down for at least two hours during an ordinary workday or that would miss three days of work out of the month. The VE testified that there would be no jobs available under those scenarios. (Tr. 57-62.)

Plaintiff's counsel asked the VE to assume a hypothetical person who had to miss two work days per month. The VE testified that there would be no jobs available under that hypothetical. Counsel then asked the VE about a hypothetical individual who would need to two to three unscheduled 15-30 minute breaks during one half of the workday. The VE testified that no jobs would be available under that scenario. (Tr. 62-63.)

## III. DECISION OF THE ALJ

On February 8, 2011, the ALJ issued an unfavorable decision. (Tr. 14-25.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 7, 2009, her alleged onset date. (Tr. 16.)

At Step Two, the ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), obesity, osteoarthritis in the left shoulder, bilateral lower extremity edema, and depression. (Tr. 16-17.) At Step Three, the ALJ found that plaintiff did not suffer from an impairment or combination of impairments of a severity that meets or medically equals the required severity of a listed impairment. (Tr. 18-20.)

The ALJ concluded that plaintiff's allegations of disabling symptoms were not fully credible based on the objective medical evidence of record, evidence that her mental impairments were controlled with treatment, and evidence of her activities of daily living. In making his credibility determination, the ALJ considered that despite plaintiff's allegations of disabling swelling in her lower legs and knee pain, the objective medical evidence of record did not support her allegations. The ALJ noted that while the record showed plaintiff had some medical problems, multiple physical and neurological examinations did not reveal objective signs or physical findings that would support her alleged limitations. (Tr. 22.)

The ALJ determined that plaintiff retained the RFC to perform light work as defined in the regulations, except that she would need to alternate sitting and standing at will, she could not climb or perform repetitive overhead reaching, and she could not work at heights or around moving or dangerous equipment. (Tr. 21.) Relying on VE testimony, the ALJ found that plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a children's attendant, storage facilities rental clerk, and information clerk. (Tr. 23-24.) Consequently, the ALJ found that plaintiff was not disabled under the Act. (Tr. 24-25.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her PRW. Id. The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

**V. DISCUSSION**

Plaintiff argues the ALJ erred in failing to properly consider the opinion of treating physician Denise Barba, M.D., and in assessing her credibility. The court disagrees.

**1. Opinion of Treating Physician Dr. Denise Barba**

Plaintiff argues that the ALJ erred in consideration of the November 5, 2010 opinion of treating physician Dr. Denise Barba and that the ALJ should have accorded it controlling weight. Dr. Barba opined that plaintiff could sit for one hour in an eight-hour workday, stand for less than one hour in an eight-hour workday, and could never perform postural maneuvers such as bending, squatting, crawling, or climbing. She opined that plaintiff would require several unscheduled breaks during an eight-hour workday and would be absent from work approximately two days every month. (Tr. 274-75.)

The court concludes that the ALJ properly considered Dr. Barba's opinion and found that it merited no weight because it was inconsistent with the objective medical evidence of record and because Dr. Barba did not provide any supporting documentation. The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors' opinions. A physician's statement that is not supported by diagnoses based on objective evidence will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight. Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ indicated that the objective findings did not support the extreme limitations contained in Dr. Barba's opinion. Dr. Barba's own contemporaneous treatment notes show that although plaintiff reported some

pain, she was not in any acute distress. (Tr. 285, 288-89, 291-92.) Plaintiff had only trace edema at the first examination. At the second examination, plaintiff had "1-2+" pitting edema and Dr. Barba prescribed a diuretic. (Tr. 291-92.) Dr. Barba noted edema on plaintiff's shin only once again, in October 2010. (Tr. 276.) Dr. Barba noted plaintiff had good pedal pulses. (Tr. 291-92.) These examinations otherwise showed that plaintiff had a normal gait, her chest was clear, there were no wheezes, rales, or rhonchi, there were no cardiovascular abnormalities, her abdomen was obese but soft and nontender, and her calves were nontender to palpation. (Tr. 289-92.) In October 2010, plaintiff had some diffuse wheezing and poor air entry, however, after a breathing treatment, she had "good" air entry and only occasional wheezing. (Tr. 276.) Plaintiff saw Dr. Barba on other occasions in 2010 with complaints of cough and cold type symptoms, and fatigue, and not for pain or leg swelling. (Tr. 277-90.) The ALJ properly found that Dr. Barba's own treatment notes did not support the limitations in her opinion.

Other record evidence also fails to support Dr. Barba's opinion. Examinations by Dr. Jones, plaintiff's former PCP, in December 2009 and January 2010, showed no cyanosis, clubbing, or edema. (Tr. 231-33.) Examinations at the Rheumatology Clinic showed no clubbing, cyanosis, or edema. While plaintiff had some pain to palpation of her upper back muscles and multiple tender points, she did not have any joint pain or joint swelling. X-rays showed only minimal degenerative changes and neurologic examination and muscle strength were normal. (Tr. 307-16.)

Finally, the consultative examination by Dr. Riggs showed plaintiff was able to able to walk 50 yards from the waiting room to exam room, take off her shoes, get up and onto the scale and the examination table, and bend over and pick up her shoes, all without difficulty. Plaintiff had no gait, neurologic, sensory, motor, or reflex abnormalities, and no muscle atrophy, muscle spasm, or tenderness was noted. ROM was essentially normal. Plaintiff reported that she could sit for about an hour at a time, stand for about an hour at a time, walk two to three blocks, and lift about 20 pounds. She had no difficulty handling objects and no difficulty traveling. Dr. Riggs stated, "[r]egarding the problem with her legs, it may be problematic to her, but I could find no definite

- 11 -

findings to limit her activities of daily living or interfere with working." (Tr. 242, 247-48.)

Based on all of the above, this court concludes the ALJ properly found that Dr. Barba's opinion was not supported by the record evidence, and therefore appropriately gave it no weight.

To the extent plaintiff contends that her RFC is not based on any medical evidence without Dr. Barba's opinion, this court disagrees. RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of her limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. The ALJ properly considered information from the state agency medical consultant, information from the state agency psychologist, the opinion of medical expert Dr. Khushalani, plaintiff's own statements, and the objective clinical findings in the record in making his RFC determination.

### 2. Credibility

Plaintiff next argues the ALJ improperly discredited her testimony. This court disagrees.

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not for the court. See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). If the ALJ discounts a claimant's credibility and gives good reasons for doing so, the court must defer to ALJ's judgment even if every factor is not discussed in depth. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In assessing plaintiff's credibility, the ALJ considered that despite plaintiff's allegations of disabling knee pain and swelling in her lower legs, the objective medical evidence of record did not support her

allegations.  See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004)(lack of objective medical evidence is a factor an ALJ may consider in determining claimant's credibility).  The ALJ noted that while the record showed plaintiff had some medical problems, physical and neurological examinations did not reveal objective signs or physical findings to support her alleged limitations.  Examinations in late 2009 and early 2010, showed either no edema or "trace" edema.  (Tr. 231, 233, 248, 292, 332).  In March 2010, plaintiff had "1 to 2+ pitting edema" over her feet, ankles and lower legs, and she was prescribed a diuretic.  (Tr. 291).  Plaintiff had "1+" edema on her shin during an October 2010 visit.  (Tr. 276.)  Subsequent examinations showed no edema.  (Tr. 308, 311, 315).  Plaintiff consistently had no clubbing or cyanosis in the legs.  (Tr. 231, 233, 332.)  Dr. Barba noted she had good pulses in her feet and a normal gait.  (Tr. 291-92.)  X-rays of the knees showed only minimal degenerative changes.  (Tr. 296.)

Finally, a consultative examination by Todd Riggs, D.O., showed plaintiff was able to able to walk 50 yards from the waiting room to the exam room, take off her shoes without difficulty, get up and onto the scales and the examination table without difficulty, and bend over and pick up her shoes without difficulty.  (Tr. 247.)  Plaintiff had no gait, neurologic, sensory, motor, or reflex abnormalities, and no muscle atrophy, muscle spasm, or tenderness.  (Tr. 248.)  ROM was essentially normal.  (Tr. 242, 248.)  Plaintiff told Dr. Riggs that she could sit for about an hour at a time, stand for about an hour at a time, walk two to three blocks, and lift about 20 pounds and that she had no difficulty handling objects or traveling.  (Tr. 248.)  Dr. Riggs could find no definite findings to limit her ADL or interfere with working.  (Tr. 248.)

The ALJ properly found that the objective evidence did not support plaintiff's allegations of disabling physical impairments.

Plaintiff also alleged disability due to depression and anxiety.  (Tr. 148).  However, as the ALJ noted, the record evidence showed plaintiff's depression was controlled with treatment.  (Tr. 22.)  See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (an impairment that can be controlled by treatment or medication is not considered disabling).  The ALJ relied on medical expert Dr. Ashok I. Khushalani's opinion that

- 13 -

the medical evidence of record showed plaintiff's depression was under control. (Tr. 19, 22, 55-56.) Specifically, the record showed that plaintiff began seeking treatment for depression and anxiety in October 2009, shortly after her alleged onset date. (Tr. 224-25.) Dr. Khushalani noted that plaintiff was diagnosed with recurrent, moderate, major depressive disorder, with a GAF score of 50, and was started on Cymbalta. (Tr. 19, 55, 224-29.) He testified that more recent medical evidence showed that plaintiff's PCP was treating her depression with Cymbalta and that her depression was controlled with medication. (Tr. 19, 55-56, 274-319.) He noted that plaintiff had not had any psychiatric hospitalizations during the relevant period and that she had had little to no formal psychiatric treatment, having received most of her treatment from her PCP. (Tr. 19, 56.) Dr. Khushalani opined that all of these things indicated plaintiff's depression was controlled. (Tr. 19, 56.) See Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010) (more weight generally given to specialist's opinion than to non-specialist); 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5).

The ALJ also considered plaintiff's testimony that she would not be able to work an eight-hour workday because of her depression and because she could not sit or stand for very long at a time. (Tr. 22, 54.) However, the ALJ included an at will sit/stand option in his RFC determination. (Tr. 21-22.) Plaintiff also testified that she could walk for about an hour at a time before needing to stop and rest, and could sit for about an hour at a time as well, consistent with what she told her consultative examiner. (Tr. 51-52, 248.) The ALJ noted that as discussed above, the record evidence supported a finding that plaintiff's depression was controlled with treatment. (Tr. 19, 22.) See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)("Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony."); Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.").

Finally, the ALJ considered plaintiff's reported activities of daily living (ADL) and found them to be inconsistent with her allegations of

disabling pain and limitations.  The ALJ noted that plaintiff was capable of assisting her daughter in delivering papers five days per week over a two-month period and that plaintiff reported in a function report that she attended church every Sunday, performed small household repairs, and did some mowing, crocheting, and swimming.  (Tr. 22, 34-36, 171-73.) Plaintiff also reported some cooking, cleaning around the house, doing laundry, shopping, driving a car, and caring for her young daughter.  (Tr. 22, 169-76.)  Activities that are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.  <u>See</u> <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1148 (8th Cir. 2001).  <u>See</u> also <u>Medhaug v. Astrue</u>, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

    Plaintiff argues her ADL do not support a finding that she can perform work on a sustained basis.  However, this was only one factor the ALJ considered in making his credibility determination.  (Tr. 21-23.)  <u>See e.g.</u>, <u>Wagner v. Astrue</u>, 499 F.3d 842, 852-53 (8th Cir. 2007) (ability to engage in extensive ADL is inconsistent with allegations of disability); <u>Cf.</u>  <u>Roberson v. Astrue</u>, 481 F.3d 1020, 1025 (8th Cir. 2007) (caring for eleven-year-old child, driving, fixing simple meals, doing housework, and shopping for groceries are extensive ADL that do not support claimant's alleged inability to work); <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1148 (8th Cir. 2001) (activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility).

    Because the ALJ here articulated the inconsistencies on which he relied in discrediting plaintiff's testimony regarding her subjective complaints, and because the credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding is affirmed.  <u>See</u> <u>Pena v. Chater</u>, 76 F.3d 906, 908 (8th Cir. 1996).

## **VI.  CONCLUSION**

    For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence in the record as a whole and consistent with the Regulations and applicable law.  The decision of

the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

                                          /S/   David D. Noce
                                 **UNITED STATES MAGISTRATE JUDGE**

Signed on August 13, 2013.